UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

------------------------------------------------x
: 
OWENS CORNING, *et al.* :
: Civil Action
v. :
: No. 04-905 (JPF)
CREDIT SUISSE FIRST BOSTON, *et al.* :
:
------------------------------------------------x

BRIEF OF WASHINGTON LEGAL FOUNDATION
AS *AMICUS CURIAE* IN SUPPORT OF
CSFB'S OPPOSITION TO PLAN PROPONENTS'
MOTION FOR ESTIMATION OF OWENS CORNING'S
PENDING AND FUTURE ASBESTOS LIABILITIES

Joel Friedlander (DE Bar ID# 3163)
Joanne P. Pinckney (DE Bar ID #3344)
Bouchard Margules & Friedlander, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
(302) 573-3500
(302) 573-3501 (facsimile)


Daniel J. Popeo
Richard A. Samp
Washington Legal Foundation
2009 Massachusetts Ave., NW
Washington, DC 20036
(202) 588-0302
(202) 588-0386 (facsimile)

Counsel for *Amicus Curiae*

Dated: March 21, 2005

## TABLE OF CONTENTS

                                                                                                                  **Page**

TABLE OF AUTHORITIES ................................................................ ii

INTERESTS OF *AMICUS CURIAE* ....................................................... 1

OVERVIEW .................................................................................. 2

ARGUMENT ................................................................................. 3

I.     DUE PROCESS PROHIBITS ADDITIONAL PUNITIVE DAMAGES
       AGAINST OWENS CORNING FOR THE SALE OF ASBESTOS PRODUCTS ... 3

       A.     The Due Process Clause Imposes Strict Limits on Punitive
             Damages Awards Arising from a Single Course of Conduct ............ 3

       B.     The Constitutional Cap on Punitive Damages Has Long Since
             Been Exceeded in This Case ................................................ 6

II.    THESE BANKRUPTCY PROCEEDINGS ARE UNIQUELY SUITED TO
       ENFORCING THE DUE PROCESS CAP ON DAMAGES ..................... 8

III.   ASBESTOS CLAIMANTS HAVE NO ENTITLEMENT TO PUNITIVE
       DAMAGES ................................................................................ 10

IV.   A SIGNIFICANT PORTION OF ASBESTOS JUDGMENTS AND
       SETTLEMENTS PAID BY OWENS CORNING WAS ATTRIBUTABLE TO
       PUNITIVE DAMAGES ................................................................ 12

CONCLUSION ............................................................................. 14

# TABLE OF AUTHORITIES

Page

**Cases:**

*BMW of North America, Inc. v. Gore,*
517 U.S. 559 (1996) .................................................. 3-4

*City of Newport v. Fact Concerts, Inc.,*
453 U.S. 247 (1981) ............................................ 10, 11, 12

*Cooper Indus., Inc. v. Leatherman Tool Group, Inc.,*
532 U.S. 424 (2001) .................................................... 4

*Davis v. Celotex Corp.,*
187 W.Va. 566, 420 S.E.2d 557 (1992) ................................... 9

*Dunn v. HOVIC,*
1 F.3d 1371 (3d Cir. 1993) (*en banc*) ............................. *passim*

*Gertz v. Robert Welch, Inc.,*
418 U.S. 323 (1974) .................................................... 3

*In re Collins,*
233 F.3d 809 (3d Cir. 2000) ........................................ 10, 11

*In re: Kensington International Limited,*
368 F.3d 289 (3d Cir. 2004) ............................................ 1

*In re School Asbestos Litig.*
789 F.2d 996 (3d Cir.), *cert. denied*, 479 U.S. 852 (1986) ............. 6

*In re Simon II Litig.,*
211 F.R.D. 86 (E.D.N.Y. 2002) .......................................... 6

*Simon v. San Paulo U.S. Holding Co.,*
*review granted*, 11 Cal. Rptr. 3d 510 (Cal. 2004, dec. pending) ........ 1

*Smith v. Wade,*
461 U.S. 30 (1983) .................................................... 10

*State Farm Mut. Automobile Ins. Co. v. Campbell,*
538 U.S. 408 (2003) ............................................... *passim*

**Rules and Constitutional Provisions:**

U.S. Const., amend. xiv, Due Process Clause ....................... *passim*

F.R.Civ.P. 23(b)(1)(b) ................................................. 6

ii

|  | Page |
|---|---|
| **Miscellaneous:** | |
| *Asbestos Crisis in Federal and State Courts:* Hearings Before the Subcomm. on Intellectual Property and Judicial Administration of the House Comm. on the Judiciary, 102 Cong., 2d Sess. 132-33 (1992) (statement of Hon. William W. Schwarzer) | 13 |

**BRIEF OF WASHINGTON LEGAL FOUNDATION
AS *AMICUS CURIAE* IN SUPPORT OF
CSFB'S OPPOSITION TO PLAN PROPONENTS'
MOTION FOR ESTIMATION OF OWENS CORNING'S
PENDING AND FUTURE ASBESTOS LIABILITIES**

**INTERESTS OF *AMICUS CURIAE***

The interests of the Washington Legal Foundation (WLF) are set out more fully in the accompanying motion for leave to file this brief.[1] WLF is a public interest law and policy center with supporters in all 50 states. WLF devotes a significant portion of its resources to tort reform efforts, including efforts to impose reasonable caps on the size of punitive damages awards. To that end, WLF has participated in numerous federal and state court proceedings that addressed punitive damages issues. *See, e.g., State Farm Mut. Automobile Ins. Co. v. Campbell,* 538 U.S. 408 (2003); *Simon v. San Paulo U.S. Holding Co., review granted,* 11 Cal. Rptr. 3d 510 (Cal. 2004, dec. pending). WLF also participated as an *amicus curiae* in another matter arising from Owens Corning's Chapter 11 proceedings. *See In re: Kensington International Limited,* 368 F.3d 289 (3d Cir. 2004).

WLF supports efforts to ensure that those injured as a result of exposure to asbestos are adequately and promptly compensated for their injuries. WLF is concerned, however, by mounting evidence that much of the money awarded as damages in asbestos liability cases has been paid to uninjured claimants. WLF believes that bankruptcy estimation proceedings provide a unique opportunity for federal courts to examine the propriety of continuing to make such payments at historic levels.

---

[1] WLF states that no counsel for a party authored this brief in whole or in part; and that no person or entity, other than WLF and its counsel, contributed monetarily to the preparation and submission of this brief.

WLF is particularly concerned that estimates for future claims against Owens Corning and other bankrupt companies not include a punitive damages component. As the submissions of Credit Suisse First Boston (CSFB) demonstrate, punitive damage payments are not authorized under applicable bankruptcy law. WLF is submitting this brief to press an additional ground for excluding punitive damages: any such award would exceed limits on punitive damages imposed by the Due Process Clause. WLF does not address any other issues raised by the parties.

## OVERVIEW

This Court conducted a hearing from January 13-20, 2005 for the purpose of estimating the liability of Owens Corning for post-bankruptcy asbestos personal injury claims that are now pending or will be asserted against the company in the future. The Plan Proponents[2] estimated that liability at $11.1 billion. CSFB, on behalf of the Debtors' prepetition institutional lenders (the "Bank Group"), estimated liability at $2.046 billion.

The parties sharply differ regarding how punitive damages should be accounted for in the estimation. The Bank Group contends that punitive damages should not be considered and that nearly $1.1 billion of the difference between the parties' estimations are attributable to the Plan Proponents' failure to exclude punitive damages from their proposed estimation. The Asbestos Claimants Committee and the Future Claimants Representative assert that an adjustment for punitive damages is neither necessary nor appropriate because bankruptcy law does not permit what they characterize as "categorical disallowance" of punitive damages claims.

---

[2] Plan Proponents include Owens Corning and affiliated entities (the "Debtors"), the Asbestos Claimants Committee, and the Future Claimants Representative.

2

They are joined by the Debtors in asserting that there is no sound factual basis for attributing any significant portion of Owens Corning's pre-verdict settlements to punitive damages.

It is uncontested that a significant portion of asbestos liability judgments entered against Owens Corning consisted of punitive damages awards. Between 1990 and 1998 alone, more than $180 million in punitive damages were awarded against the company. Nor is there any question that counsel who engaged in settlement discussions regarding Owens Corning asbestos litigation were well aware of the propensity of juries in many states to return large punitive damages verdicts against the company.

## ARGUMENT

### I. DUE PROCESS PROHIBITS ADDITIONAL PUNITIVE DAMAGES AGAINST OWENS CORNING FOR THE SALE OF ASBESTOS PRODUCTS

#### A. The Due Process Clause Imposes Strict Limits on Punitive Damages Awards Arising from a Single Course of Conduct

In a series of decisions handed down over the past decade, the U.S. Supreme Court has imposed strict constitutional limits on the extent to which an entity may be subjected to punitive damages awards arising from a single course of conduct. Application of those decisions to this case makes clear that Owens Corning has already paid out, in connection with asbestos liability lawsuits, damages well in excess of the constitutional limit on punitive damages. Accordingly, the Court should take steps to ensure that the estimated value it assigns to future asbestos claims does not reflect any amount for punitive damages.

Punitive damages are awarded not to redress loss suffered by a plaintiff, but rather are "private fines leveled by civil juries to punish reprehensible conduct and to prevent its future occurrence." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974). *See also BMW of*

3

*North America, Inc. v. Gore,* 517 U.S. 559, 568 (1996) ("Punitive damages may properly be imposed to further a State's legitimate interest in punishing unlawful conduct and deterring its repetition."); *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 432 (2001). States courts are not unconstrained in establishing their own common law rules governing punitive damages awards; rather, "it is well established that there are procedural and substantive constitutional limitations on these awards." *State Farm,* 538 U.S. at 416. In particular, punitive damages are subject to the Due Process Clause's prohibition against "grossly excessive or arbitrary punishments on a tortfeasor." *Id.* "To the extent an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property." *Id.* at 417.

The Supreme Court has established three "guideposts" to be used in evaluating whether a punitive damages award is constitutionally excessive:

(1) the degree of reprehensibility of the defendant's misconduct;

(2) the disparity between the actual or potential harm suffered by the plaintiffs and the punitive damages award; and

(3) the differences between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*Id.* at 418. The determination of whether an award is excessive must take into account any compensatory damage awards against the defendant, because every dollar awarded for compensatory damages provides precisely the same degree of deterrence and punishment as a dollar awarded for punitive damages. *See id.* at 419 (explaining that excessiveness of punitive damages should be determined only *after* taking into account the deterrent and punitive effects of compensatory damages).

4

In this and many other "mass tort" cases, the injuries of every potential plaintiff can be traced to a single course of conduct.[3] It follows that *all* prior damage payments arising from a single course of conduct (*i.e.*, including compensatory and punitive damages awarded in all prior lawsuits) must be taken into account in determining whether additional punitive damage awards would properly serve society's interests in punishment and deterrence. If an additional punitive damages award would not legitimately serve those interests, then it constitutes an arbitrary deprivation of property and violates due process. *See id.* at 423 (Due Process Clause guards against "multiple punitive damages awards for the same conduct"). The Third Circuit has recognized that substantive due process imposes a strict limit on aggregate punitive damages imposed for a single course of conduct, requiring an examination of all prior awards (both punitive and compensatory) arising from that single course of conduct:

> [T]he district courts in this circuit should determine whether a punitive award to a plaintiff in a particular case should be struck by carefully scrutinizing the "punitive damages overkill" evidence submitted to them, both with respect to past awards actually paid by a defendant and the defendant's ability to satisfy future punitive damages awards.

*Dunn v. HOVIC*, 1 F.3d 1371, 1391 (3d Cir. 1993) (*en banc*).[4]

---

[3] Given that: (1) it has been many decades since Owens Corning has manufactured any products containing asbestos; and (2) evidence pertaining to negligence and causation is virtually identical in every asbestos liability suit against Owens Corning, there can be no serious argument that future claimants could base their claims on a course of conduct distinct from the conduct that led to Owens Corning's previous liability payments.

[4] *Dunn* noted that the Third Circuit had previously recognized the due process concerns implicated by "successive punitive damages awards arising from the same course of conduct," and cited both to prior Third Circuit decisions and to decisions from other federal courts for the proposition that "'powerful arguments have been made that as a matter of constitutional law or of substantive tort law, the courts shoulder some responsibility for preventing repeated awards of punitive damages for the same acts or series of acts.'" *Id.* at

### B. The Constitutional Cap on Punitive Damages Has Long Since Been Exceeded in This Case

If one applies the "guideposts" established by *State Farm*, there can be little doubt that due process prohibits imposition of additional punitive damages on Owens Corning. In light of the billions of dollars of damages (both compensatory and punitive) that Owens Corning has paid to asbestos liability claimants for a single course of conduct that ended decades ago and has no chance of recurring, imposition of additional punitive damages would amount to arbitrary punishment.[5]

WLF will not repeat here the entire course of Owens Corning's conduct that led to its asbestos liabilities. Suffice to say that however one wishes to characterize Owens Corning's conduct, it has already been subjected to as severe a punishment as could be meted out to a corporation: it has had its equity entirely wiped out. Imposing liability for additional punitive damages above and beyond the billions of dollars in compensatory and punitive damages that

---

1385 (quoting *In re School Asbestos Litig.*, 789 F.2d 996, 1005 (3d Cir.), *cert. denied*, 479 U.S. 852 (1986)). *See also, id.* at 1403 (Weis, J., dissenting) ("Courts of Appeals concede that, at some point, multiple punitive awards in mass tort cases violate due process."). The principle that due process imposes an absolute cap on aggregate punitive damages awards arising from a single course of conduct has become so well recognized that a federal district court recently certified a nationwide Fed.R.Civ.P. 23(b)(1)(b) "limited fund" class action for purposes of consolidating all punitive damages claims asserted by smokers bringing product liability claims against the cigarette industry. *In re Simon II Litigation*, 211 F.R.D. 86 (E.D.N.Y. 2002). The court reasoned that potential punitive damages constituted a "limited fund" for purposes of Rule 23(b)(1)(b) because the aggregate punitive damages awardable in liability claims against the cigarette industry were strictly limited by the Due Process Clause. *Id.* at 183-186.

[5] Moreover, those senior Owens Corning corporate officials responsible for continuing to market asbestos products despite knowledge of potential health hazards have not worked for the company for decades -- so imposing additional punitive damages on Owens Corning would not serve to punish those officials.

6

Owens Corning has already paid out would not further society's interests in imposing rational punishments on wrongdoers. Nor could additional punitive damages be defended as serving to deter Owens Corning and others from repeating the actions that gave rise to the company's asbestos tort liability. Given the scores of major corporations driven into bankruptcy by asbestos tort litigation, it would be ludicrous to suggest that other companies might still be tempted to follow in Owens Corning's footsteps but would be deterred from doing so if even more punitive damages are piled on top of Owens Corning's billions of dollars of asbestos-related payments.

In *Dunn,* Owens Corning argued in 1992-93 before the Third Circuit that it had *already* been ordered to pay out a constitutionally excessive amount of punitive damages for having sold products containing asbestos. Five judges on the Third Circuit agreed with that argument. *Dunn*, 1 F.3d at 1393-1405 (Weis, J., dissenting, joined by Greenberg, Hutchinson, and Scirica, JJ.); *id.* at 1405 (Becker, J., dissenting). While the majority of the *en banc* court ultimately rejected the argument because Owens Corning had produced insufficient evidence that aggregate punitive damages awards paid *as of that date* were constitutionally excessive, it recognized the existence of such a limit and the duty of courts to reject awards in excess of the cap imposed by the Due Process Clause. *Id.* at 1390. Twelve years and billions of dollars later, Owens Corning's claim that the Constitution prohibits additional punitive damages awards is even more forceful.

The *Dunn* majority's rationale for rejecting Owens Corning's due process argument is particularly instructive. The majority held that the company could not prevail on its due process arguments without at least some showing "that it will not be able to pay future awards

7

of either compensatory or punitive damages." *Id.*[6] Today, there is no longer any question on this issue: as a result of massive asbestos liability payments, Owens Corning cannot even pay its current creditors in full, much less future awards of punitive damages. Under those circumstances, due process does not permit imposition of any additional punitive damages awards against Owens Corning. *See also id.* at 1404 (Weis, J., dissenting) ("Court must also remember that punitive damages are intended to 'sting,' not to destroy.").

*State Farm*'s third "guidepost" also dictates that no additional punitive damages awards are permissible. The third guidepost instructs courts to compare punitive damages awards against a defendant to "the civil penalties authorized or imposed in comparable cases." *State Farm*, 538 U.S. at 418. Assuming for the sake of argument that government officials might have had cause to impose civil penalties on Owens Corning for some of the conduct that gave rise to its asbestos liability, no State authorizes civil penalties that amount to more than a tiny fraction of the hundred of millions of dollars in punitive damages paid to date by Owens Corning in asbestos liability suits. When punitive damages awarded to date already "dwarf" the maximum civil penalties that could have been imposed on Owens Corning, no additional punitive damages awards are permissible. *Id.* at 428.

## II. THESE BANKRUPTCY PROCEEDINGS ARE UNIQUELY SUITED TO ENFORCING THE DUE PROCESS CAP ON DAMAGES

Courts have been reluctant to enforce the due process cap on aggregate punitive

---

[6] Owens Corning had attempted to base its due process claim on a showing that its asbestos liability payments far exceeded any profits derived from the sale of its Kaylo product. The Third Circuit held that even if Owens Corning had successfully made such a showing, due process does not require "striking all punitive damages claims simply because the harm caused by a defective product was so severe as to wipe out all profit." *Id.* at 1391.

damages awards in the context of an asbestos liability action brought by a single plaintiff. But the factors underlying that reluctance are inapplicable to these proceedings. Because the Court has jurisdiction over all of Owens Corning's assets and all pending and future asbestos liability claims against the company, it is uniquely situated to address that constitutional issue.

Courts hearing asbestos liability actions brought by a single claimant have had difficulty applying the constitutional cap on aggregate punitive damage awards due to the decentralized nature of the American legal system. Although the Third Circuit in *Dunn* recognized that asbestos liability defendants (assuming they make an adequate factual and legal showing) are entitled to a ruling establishing a cap on aggregate punitive damages awards, *Dunn*, 1 F.3d at 1391, the appeals court nonetheless expressed reluctance to impose such caps in the context of suits brought by a single claimant. The Third Circuit noted the essential "arbitrariness" of a judicial ruling, in connection with a single tort action, that the cap on aggregate punitive damages against an entity has been exceeded, because such a ruling would not be binding outside the jurisdiction of the rendering court. *Id.* at 1386 ("'[B]ecause asbestos trials are held nationwide, it is doubtful that one state's ruling would necessarily bind other jurisdictions'") (quoting *Davis v. Celotex Corp.*, 187 W. Va. 566, 420 S.E.2d 557, 565-66 (1992)). Imposing a cap in a single case would work to the detriment of one particular plaintiff, but it would do little to help the defendant -- who would likely continue to be subject to punitive damages awards in other jurisdictions. *Id.* The Third Circuit later effectively ended punitive damages awards in federal-court asbestos liability suits consolidated in the Eastern District of Pennsylvania by the Judicial Panel on Multidistrict Litigation (by withholding remand of punitive damages claims when remanding the remainder of individual

asbestos claims to the transferor court for trial); but it lamented that its practice did not serve to prevent massive punitive damages awards in other jurisdictions against asbestos defendants. *In re Collins,* 233 F.3d 809, 812 (3d Cir. 2000) ("It is discouraging that while the Panel and transferee court follow this enlightened practice, some state courts allow punitive damages in asbestos cases.").

But this Court does not face the problem confronted by courts hearing asbestos liability suits brought by individual claimants. Rather, by virtue of Owens Corning's Chapter 11 petition, the Court is in a position to ensure that any determination it makes with respect to a cap on punitive damages is enforceable nationwide. If, as WLF urges, the Court rules that due process prohibits imposition of additional punitive damages liabilities on Owens Corning, it has the power to ensure that all asbestos claimants are treated identically with respect to the issue. Accordingly, the Court need not be reluctant to address the claim -- first pressed by Owens Corning before the Third Circuit 13 years ago -- that the Constitution prohibits inclusion of a punitive damages component in the estimated value of future claims against the company.

### III. ASBESTOS CLAIMANTS HAVE NO ENTITLEMENT TO PUNITIVE DAMAGES

No party has a legal entitlement or property right to be awarded punitive damages. As the Supreme Court has explained, "Punitive damages are never awarded as of right, no matter how egregious the defendant's conduct." *Smith v. Wade,* 461 U.S. 30, 52 (1983). Punitive damages are imposed to punish and deter wrongdoing, not to compensate for injury; they are "in effect a windfall to a fully compensated plaintiff." *City of Newport v. Fact Concerts, Inc.,*

453 U.S. 247, 267 (1981). *See also In re Collins*, 233 F.3d at 812 ("Punitive damages are a windfall to the recipients over and above compensatory damages."). Accordingly, if the Court determines that the punitive damages component must be eliminated from the estimation because society's interests in punishment and deterrence have already been fully served, asbestos claimants have no basis for complaining.

Indeed, the asbestos claimants' claim of entitlement to punitive damages is particularly inappropriate when one considers that any punitive damages award will be at the expense of other creditors who share none of the blame for the conduct giving rise to the punitive damages claims. Under analogous circumstances, the Supreme Court held that imposition of punitive damages on a municipality and its taxpayers based on the misconduct of their local government officials was prohibited as a matter of law:

> [A]n award of punitive damages against a municipality "punishes" only the taxpayers, who took no part in the commission of the tort. . . . Indeed, punitive damages imposed on a municipality are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill. Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers.

*City of Newport*, 453 U.S. at 267.

Similar to the municipal taxpayers in *City of Newport*, Owens Corning's creditors bear no share of the blame for actions giving rise to the punitive damages claims in this case. Yet, they are in effect being asked to foot the bill for those claims. Particularly in light of the huge damage awards already paid by Owens Corning to asbestos claimants, "[n]either reason nor justice suggests" that all of Owens Corning's creditors – trade creditors, bondholders, institutional lenders, and asbestos property damage claimants – ought to shoulder the burden

11

that the asbestos claimants are seeking to foist upon them. *Id.*

## IV. A SIGNIFICANT PORTION OF ASBESTOS JUDGMENTS AND SETTLEMENTS PAID BY OWENS CORNING WAS ATTRIBUTABLE TO PUNITIVE DAMAGES

The Plan Proponents argue alternatively that an adjustment for punitive damages is inappropriate because there is no sound factual basis for attributing any "significant portion" of Owen Corning's pre-verdict settlements to punitive damages. Debtors' Post-Trial Submission at 13; Plan Proponents' Post-Trial Br. 34-35. To the contrary, it defies common sense to assert, in light of the large punitive damages regularly imposed against Owens Corning by juries in asbestos tort suits, that punitive damages had no more than a negligible effect on settlement values.

As the Bank Group has pointed out, Owens Corning on numerous occasions told courts – in the "Peterson Affidavit" submitted in an effort to avoid repeated punitive damages awarded against the company – that some unknown portion of $2.2 billion paid in settlements to asbestos claimants prior to 1998 should be attributed to punitive damages. CSFB's Post-Hearing Br. 59. Among the courts to which Owens Corning made such a claim was the Third Circuit in *Dunn*. Owens Corning told the appeals court that its settlement costs were being driven up by, among other verdicts, "a single punitive damage award for $150 million and other awards from 1989 and 1990 totaling approximately $113 million." *Dunn,* 1 F.3d at 1398 n.36. Owens Corning's argument convinced Judge Weis, who approvingly cited the congressional testimony of U.S. District Judge William W. Schwarzer regarding the large effect of the punitive damages "overhang" on asbestos settlement amounts. In a passage with which the majority did not take issue, Judge Weis explained:

12

> [T]he potential for punitive awards is a weighty factor in settlement negotiations and inevitably results in a larger settlement than would ordinarily be obtained. To the extent that this premium exceeds what would otherwise be a fair and reasonable settlement for compensatory damages, assets that could be available for satisfaction of future compensation claims are dissipated.

*Id.* at 1398 (Weis, J., dissenting) (citing *Asbestos Crisis in Federal and State Courts*: Hearings Before the Subcomm. on Intellectual Property and Judicial Administration of the House Comm. on the Judiciary, 102d Cong., 2d Sess. 132-33 (1992) (statement of Hon. William W. Schwarzer)).

The Plan Proponents insist that no portion of Owens Corning's pre-verdict settlement payments should be attributed to the punitive damages threat because the Bank Group cannot demonstrate with mathematical precision the percentage that should be so attributed. But that argument is wholly inconsistent with the entire basis of the Plan Proponents' estimation claim, which is based on an assertion that "Owens Corning's historic experience in the tort system provides a valid basis on which to estimate the claims." Plan Proponents' Post-Trial Br. 16. Any assertion that there is insufficient evidence to permit the court to quantify what percentage of payments was compensatory and what percentage was based on a desire to ward off potential punitive damages would seem to undermine entirely the Plan Proponent's use of historical experience as a basis for estimating future asbestos compensatory liability claims.[7]

The Plan Proponents insist that "punitive damages are but one of a whole host of factors that went into the settlement values." *Id.* at 34. That may well be true; but given that

---

[7] Nor should any significance be attached to the fact that settlement amounts were never explicitly attributed to punitive damages. Such attributions generally reflect parties' tax and insurance considerations, rather than their actual motives in arriving at a settlement figure.

13

attorneys negotiating settlements of asbestos claims were well aware that juries were routinely imposing substantial punitive damages on Owens Corning, they would not have been acting rationally if they had not assigned some significant weight to the potential for punitive damages.

## CONCLUSION

*Amicus curiae* Washington Legal Foundation respectfully requests that the Court ensure that any estimation it issues properly account for the effect of punitive damages on Owens Corning's claims history, and that any punitive damages component be eliminated from the estimation.

Respectfully submitted,

/s/ Joel Friedlander
Joel Friedlander (DE Bar ID# 3163)
Joanne P. Pinckney (DE Bar ID #3344)
Bouchard Margules & Friedlander, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
(302) 573-3500
(302) 573-3501 (facsimile)
jfriedlander@bmf-law.com
jpinckney@bmf-law.com

Daniel J. Popeo
Richard A. Samp
Washington Legal Foundation
2009 Massachusetts Ave., NW
Washington, DC 20036
(202) 588-0302
(202) 588-0386 (facsimile)
Counsel for *Amicus Curiae*

Dated: March 21, 2005

## CERTIFICATE OF SERVICE

      I hereby certify that on this 21st day of March, 2005, copies of the foregoing amicus curiae brief of Washington Legal Foundation were deposited in the U.S. Mail, first-class postage prepaid, addressed to the following:

Norman L. Pernick
J. Kate Stickles
Saul Ewing LLP
222 Delaware Ave. PO Box 1266
Wilmington, DE 19899-1266

Frank J. Perch, III
Office of the US Trustee
Fedl Bldg. 2nd Floor
844 King St.
Wilmington, DE 19801

William H. Sudell, Jr.
Morris, Nichols, Arsht and Tunnell
1201 N. Market St.
PO Box 1347
Wilmington, DE 19899-1347

Mark S. Chehi
Skadden Arps
One Rodney Square PO Box 636
Wilmington, DE 19899

Edmund Emrich
Kaye Scholer LLP
425 Park Ave.
New York, NY 10022

Elihu Inselbuch
Rita Tobin
Caplin & Drysdale, Chartered
399 Park Ave.
New York, NY 10022-4614

Stephen H. Case
Davis Polk & Wardell
450 Lexington Avenue
New York, NY 10017

James L. Patton
Young Conaway
The Brandywine Bldg.
1000 West St., 17th Floor
Wilmington, DE 19801

Marla R. Eskin
Mark Hurford
Campbell & Levine, LLC
800 N. King St., Suite 300
Wilmington, DE 19801

D.J. Baker
Skadden Arps
Four Times Square
New York, NY 10036

J. Andrew Rahl, Jr.
Jonathan Kromberg
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020

Kenneth H. Eckstein
Ellen Nadler
Kramer Levin
919 Fourth Ave.
New York, NY 10022

Ralph I. Miller
Weil Gotshal & Manges
100 Crescent St., Suite 1300
Dallas, TX 75201

Martin J. Bienenstock
Weil, Gotshal & Manges
767 Fifth Avenue
New York, NY 10153

David A. Hickerson
Adam P. Strochak
Weil, Gotshal & Manges
1501 K St., NW, Suite 100
Washington, DC 20005

Richard S. Cobb
Landis Rath & Cobb LLP
919 Market Street, Suite 600
Wilmington, DE 19810

James J. McMonagle
24 Walnut St.
Chagrin Falls, OH 44022

Francis A. Monaco, Jr.
Monzack & Monaco, P.A.
1201 Orange Street, Suite 400
Wilmington, DE 19801

Charles O. Monk, II
Saul Ewing LLP
100 S. Charles St.
Baltimore, MD 21201

Petr Van N. Lockwood
Nathan D. Finch
Caplin & Drysdale, Chartered
One Thomas Cir., NW
Washington, DC 20005

Roger E. Podesta
Mary Beth Hogan
Helen Y. Kim
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022

Christopher W. Winter
Richard W. Riley
Duane Morris LLP
1100 N. Market St., Suite 1200
Wilmington, DE 19801-1246

Linda M. Carmichael
White and Williams LLP
824 N. Market St., Suite 902
Wilington, DE 19899-0709

William S. Katchen
Duane Morris LLP
744 Broad Street
Newark, NJ 07102

Jane W. Parver
Kaye Scholer
425 Park Avenue
New York, NY 10022

Tancred V. Schiavoni
Gerald A. Stein
Robert Winter
O'Melveny & Myers LLP
Times Sq. Tower, 7 Times Square
New York, NY 10036

David R. Hurst
Skadden, Arps, Slate, Meagher & Flom
One Rodney Square, PO Box 636
Wilmington, DE 19899

Barbara H. Stratton
Knepper & Stratton
1228 N. King St., PO Box 1795
Wilmington, DE 19899

Noel C. Burnham
Montgomery, McCracken, Walker & Rhoads
300 Delaware Ave., Suite 750
Wilmington, DE 19801

_____
Richard A. Samp