IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---

**OWENS CORNING, *et al*.,**

   v.

**CREDIT SUISSE FIRST BOSTON, *et al*.**

---

Civil Action
No. 04-905

**PLAN PROPONENTS' BRIEF IN RESPONSE TO THE AMICUS CURIAE BRIEF OF THE WASHINGTON LEGAL FOUNDATION IN SUPPORT OF CFSB'S OPPOSITION TO PLAN PROPONENTS' MOTION FOR ESTIMATION OF OWENS CORNING'S PENDING AND FUTURE ASBESTOS LIABILITIES**

| | |
|---|---|
| CAPLIN & DRYSDALE, CHARTERED<br>Elihu Inselbuch<br>399 Park Avenue<br>New York, New York 10022<br>(212) 319-7125<br><br>Nathan D. Finch<br>Walter B. Slocombe<br>One Thomas Circle, NW, 11th Floor<br>Washington, D.C. 20005<br>(202) 862-5000<br><br>National Counsel for the Official Committee<br>of Asbestos Claimants | CAMPBELL & LEVINE, LLC<br>Marla R. Eskin (2989)<br>Mark T. Hurford (3299)<br>800 King Street, Suite 300<br>Wilmington, Delaware 19801<br>(302) 426-1900<br><br>Local Counsel for the Official<br>Committee of Asbestos Claimants |
| KAYE SCHOLER LLP<br>Michael J. Crames<br>Jane W. Parver<br>Benjamin Mintz<br>Michael Lynn<br>425 Park Avenue<br>New York, New York 10022<br>(212) 836-8000<br><br>Counsel for the Futures Representative<br><br>Dated: March 30, 2005 | YOUNG CONAWAY STARGATT<br>& TAYLOR, LLP<br>James L. Patton (2202)<br>Edwin J. Harron (3396)<br>Sharon Zieg (4196)<br>1000 West Street, 17th Floor<br>P.O. Box 391<br>Wilmington, Delaware 19899-0391<br>(302) 571-6600<br><br>Local Counsel for the Futures<br>Representative |

# TABLE OF AUTHORITIES

## CASES

*BMW of North America, Inc. v. Gore,* 517 U.S. 559 (1996)……………………………...3

*Dunn v. Hovic*, 1 F.3d 1371 (3rd Cir. 1993)(en banc)……………………………………..2

*Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35 (Tex. 1998)………………..2

*Pacific Mut. Life Ins. Co. v. Haislip*, 499 U.S. 1 1991)…………………………....…..4

*Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 281 (2nd Cir. 1990)………………..3

*Spaur v. Owens-Corning Fiberglas Corp.*, 510 N.W.2d 854 (Iowa 1994)……………….2

*State Farm Mut. Automobile Ins. Co. v. Campbell,* 538 U.S. 408 (2003)…………….…..3

*TXO Production Corp. v. Alliance Resources Corp.,* 509 U.S. 443 (1993)………………4

## MISCELLANEOUS

*Andrea G. Nagel, Propriety of Awarding Punitive Damages to Separate Plaintiffs Bringing Sucessive Actions Arising Out of Common Incident or Circumstances Against Common Defendant or Defendants*, 11 A.L.R. 4th 1261 (2002) ………………...…….2

The Official Committee of Asbestos Personal Injury Claimants (the "ACC") and James J. McMonagle, the legal representative for future asbestos personal injury claimants (the "Futures Representative," together, the "Plan Proponents"), hereby submit this brief in response to the Amicus Curiae brief filed by the Washington Legal Foundation ("WLF") in Support of CSFB's Opposition to Plan Proponents' Motion for Estimation of Owens Corning's Pending and Future Asbestos Liabilities (hereinafter, "WLF Br.").[1]

## **DISCUSSION**

This Court conducted the Estimation Hearing from January 13-20, 2005, following which the parties had the opportunity to brief fully every legal or factual issue they considered relevant to the estimation. Now more than a month after the post-hearing briefing has concluded and while the Estimation Motion is *sub judice*, WLF has filed an Amicus Curiae brief raising an entirely new argument – that "Due Process prohibits additional punitive damages against Owens Corning for the sale of asbestos products" and therefore "any punitive damages component [should] be eliminated from the estimation." WLF Br. at 3, 14.

No estimate of additional punitive damages was sought at the Estimation Hearing. The only issue regarding punitive damages that *was* tried was not whether additional punitive damages would be constitutionally permissible but whether, in estimating Owens Corning's present and future asbestos liability for compensatory damages on the date it filed for bankruptcy, it is appropriate to reduce the average values at which Owens Corning resolved cases by some adjustment for *past* punitive damages. As we have demonstrated at trial and in prior submissions, such an adjustment is not justified under basic bankruptcy principles.

---

[1] Capitalized terms not otherwise defined herein shall have the respective meanings ascribed to them in the Plan Proponents' Post-Trial Brief filed on February 7, 2005 (hereinafter, the "PP Br.").

1

Moreover, the evidence demonstrated that the threat of punitive damages at trial had no measurable effect on most settlements and that exclusion of the punitive damages resulting from the very small number of jury awards containing them would have only a very minimal impact.[2] The Plan Proponents respectfully refer the Court to their and the Debtors' prior submissions on the punitive damages issues addressed at trial.[3]

The due process arguments, including the "multiple punishments for the same Owens Corning conduct" variant that WLF makes now, have been rejected by the Third Circuit (en banc) and by the Supreme Courts of Texas and Iowa in Owens Corning cases fully litigated and specifically focused on the constitutional issues.[4] *Dunn v. Hovic*, 1 F.3d 1371 (3d Cir. 1993) (en banc); *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35 (Tex. 1998); *Spaur v. Owens-Corning Fiberglas Corp.*, 510 N.W.2d 854 (Iowa 1994).[5]

---

[2] ACC and FCR projections and values of future claims are based upon the 1996-2000 period in which there were few punitive damage awards. Dr. Rabinovitz analyzed the impact of removing all punitive damage awards and determined that doing so, for the five year period, had only a 5% effect on Owens Corning's average claim values and has less than a 1% effect on Owens Corning's average claim values if a one or two year calibration period was used. PPEX 70 at 14-15 n.14; 1/18/05 am Tr. 60 (Rabinovitz).

[3] *See* PP Br. at 29-36; PP Post-Trial Reply Br. at 31-34; Debtors' Post–Trial Br. at 13-16; Debtors' Post-Trial Reply Br. at 12-13, 19-20.

[4] WLF's assertion (WLF Br. at 9) that the Third Circuit later effectively ended punitive damages in federal court suits consolidated before Judge Weiner in the MDL mischaracterizes that case. Judge Weiner's ruling ***defers*** consideration of punitive damages; it does not dismiss those claims.

[5] WLF does not cite any case in which punitive damages have actually been set aside or reduced on the "multiple punishments for the same conduct" argument it advances here, and our research has found no such case. *See* Andrea G. Nagel, *Propriety of Awarding Punitive Damages to Separate Plaintiffs Bringing Successive Actions Arising Out of Common Incident or Circumstances Against Common Defendant or Defendants*, 11 A.L.R. 4th 1261 (2002) (collecting cases in which the issue has been discussed, but none of which resulted in such a claim being sustained).

The Supreme Court has made clear that the due process inquiry into punitive damages is a highly fact-specific one, and that courts reviewing a claim of constitutionally excessive punitive damages must consider certain factual questions as mandatory "guideposts" for their determination. *State Farm Mut. Automobile Ins. Co. v. Campbell,* 538 U.S. 408, 418 (2003) (courts "instructed" to consider reprehensibility of the defendant's misconduct; disparity between harm suffered and punitive damages awarded, and relation to other applicable penalties); *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 575 (1996); *see also Simpson v. Pittsburgh Corning Corp.,* 901 F.2d 277, 281 (2d Cir. 1990) (ruling on excessive aggregate punitive damages claim requires that "judge . . . be provided with a factual basis sufficient for evaluating the entire scope of the defendant's wrongful conduct" and "[o]nly with such factual information can the judge determine" the constitutional claim). In considering precisely the claim that WLF makes here, the Third Circuit has explicitly held that the burden is on the party challenging punitive damages as constitutionally excessive to make the necessary evidentiary showings. *Dunn,* 1 F 3d at 1391. No such showing has been made here.

On the contrary, the evidence in this record on the scale of past punitive damages is fatal to WLF's due process contention.[6] Settlement values are the major factor in estimating the

---

[6] The fallacy of WLF's argument is highlighted by the fact that the Bank Debt Holders' *own expert* contended – without justification – that historic resolution costs should be reduced by 10 to 25%, depending on disease claimed, to eliminate punitive damage effects. That contention amounts to saying that he believed the maximum possible ratio of punitive to compensatory damages was one dollar of punitives for every three to nine dollars of compensatories. By contrast, the lowest ratio the Supreme Court has ever suggested as a constitutional limit on punitive damages is equality, *i.e.*, one dollar of punitives for every dollar of compensatories. *Campbell,* 538 U.S. at 425 ("When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost reaches of the due process guarantee."). The only punitive-to-compensatory ratios the Supreme Court has actually held to be beyond constitutional limits are far above the "single-digit ratio[s]" that the Supreme Court has suggested are "in practice" the standard, and vastly beyond the 1:7 maximum implied by the Bank Debt Holders' expert. *Gore,* 517 U.S. at 582 (rejecting 500:1 and suggesting, at 582 n. 35,

3

amount of Owens Corning's liability. The testimony unequivocally established that the purported threat of punitive damages did not affect the values of group or inventory settlements, which constituted the majority of Owens Corning's settlements. 1/13/05 pm Tr. 78-79 (Leff); 1/14/05 am Tr. 18 (Tucker). Nor did the Bank Debt Holders establish that there was any reliable scientific methodology to quantify whether and to what extent the threat of punitive damages affected Owens Corning's settlement history, because of the myriad variables, beyond the potential availability of punitive damages, that the experts acknowledged could account for differences in settlement values.[7] Dr. Dunbar made no study whatsoever of the effect of punitive damages on Owens Corning's historical claim resolution values. Dr. Vasquez's analysis of the punitive damage amounts was deficient for the many reasons set forth at pages 34-35 of the Plan Proponents' Post-Trial Brief.[8] Thus, WLF's argument must fail because the record evidence at the Estimation Hearing did not establish that punitive damages affected Owens Corning's historical settlement averages and did establish that there was no way to objectively quantify any impact should there be one. 1/18/05 am Tr. 64-66 (Rabinovitz).

---

that 35:1 could be excessive). *Compare TXO Production Corp. v. Alliance Resources Corp.,* 509 U.S. 443, 465-66, 472 (1993) (10:1 acceptable) and *Pacific Mut. Life Ins. Co. v. Haslip* 499 U.S. 1, 23-24 (1991) (4:1 acceptable).

[7]   A document introduced by the Bank Debt Holders that had been submitted by Owens Corning in 1998 to an Ohio court as part of its "enough is enough" campaign highlights the inability to quantify the supposed effect of punitive damages on settlement values: "Owens Corning believes an ***unknown*** portion of the more than $2.2 billion in indemnity already spent to resolve [] 198,800 cases should be attributed to punitive damages as the settlements reached with plaintiffs extinguished both the punitive and compensatory claims." Gregory Peterson Affidavit (PPEX. 17) at 6 (emphasis added).

[8]   The only punitive damages adjustment that could arguably be made without engaging in utter speculation would be to actual verdicts (as opposed to settlements) that included punitive damages; but, as explained above in footnote 2, the evidence showed that such an adjustment would have only a minimal impact.

4

**CONCLUSION**

WLF's belated injection of a new issue contention into this estimation proceeding should be rejected, not simply because it is untimely, but because it is wrong.

Dated: March 30, 2005                                   Respectfully submitted

/S/ Marla Rosoff Eskin
CAMPBELL & LEVINE, LLC
Marla R. Eskin  (2989)
Mark T. Hurford (3299)
Suite 300
800 N. King Street
Wilmington, DE 19801
(302) 426-1900

Local Counsel for the Official Committee of Asbestos Claimants

CAPLIN & DRYSDALE, CHARTERED
Elihu Inselbuch
399 Park Avenue
New York, NY 10022
(212) 319-7125

Walter B. Slocombe
Nathan D. Finch
One Thomas Circle, N.W., 11th Floor
Washington, D.C. 20005
(202) 862-5000

National Counsel for the Official Committee of Asbestos Claimants

KAYE SCHOLER LLP
Michael J. Crames
Jane W. Parver
Benjamin Mintz
Michael Lynn
425 Park Avenue
New York, New York 10022
(212) 836-8000

National Counsel for the Futures Representative

/S/ Sharon Zieg
YOUNG, CONAWAY,
STARGATT & TAYLOR LLP
James L. Patton, Jr. (2202)
Sharon M. Zieg (4196)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
(302) 571-6600

Local Counsel for the Futures Representative